UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| **GEORGE JOHN BYRD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 2:16-cv-00271 |
| ) | REEVES/CORKER |
| **RANDY LEE, SHANNON CLARK,** ) | |
| **CPL. LUNDY, COUNSELOR** ) | |
| **SHELTON, OFFICER J. VAUGHT,** ) | |
| **and OFFICER O'NEIL,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's pro se complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 2] and motion for leave to proceed *in forma pauperis* [Doc. 5]. For the reasons discussed below, Plaintiff's request to proceed *in forma pauperis* [Doc. 5] will be **GRANTED**, Defendants Lee, Shelton, and Lundy will be **DISMISSED**, and this action will proceed only as to Plaintiff's Eighth Amendment claims against Defendants O'Neil, Clark, and Vaught.

### I. FILING FEE

Under the Prison Litigation Reform Act ("PLRA"), any prisoner who files a complaint in a district court must tender the full filing fee or file (1) an application to proceed *in forma pauperis* without prepayment of fees and (2) a certified copy of his inmate trust account for the previous six-month period. 28 U.S.C. § 1915(a)(2). On August 26, 2016, the Court entered an Order directing Plaintiff to submit a copy of his trust-fund account statement for the past six months [Doc. 4]. Plaintiff then filed the required account statement [Doc. 5], and it appears from his

application that he lacks sufficient financial resources to pay the $350.00 filing fee. Accordingly, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 5] is **GRANTED** and, pursuant to 28 U.S.C. § 1915, the Clerk is **DIRECTED** to file this action without the prepayment of costs or fees or security therefor as of the date the Complaint was received. Plaintiff's earlier motion for leave to proceed *in forma pauperis* [Doc. 1] is therefore **DENIED as moot**.

Because Plaintiff is incarcerated at the Northwest Correctional Complex[1] ("NWCX"), he is herewith **ASSESSED** the civil filing fee of $350.00. Pursuant to 28 U.S.C. § 1915(b)(2), the custodian of Plaintiff's inmate trust account at the institution where he now resides is directed to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, twenty percent (20%) of the Plaintiff's preceding monthly income (or income credited to the Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum to NWCX to ensure that the custodian of Plaintiff's trust account complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee. The Clerk is **DIRECTED** to forward a copy of this Memorandum to the Court's financial deputy.

---

[1] The Court's docket reflects that Plaintiff is incarcerated at the Northeast Correctional Complex. However, according to the Tennessee Department of Corrections' on-line Inmate Locator Service—which allows the public to track the location of state inmates—Plaintiff is currently incarcerated at NWCX. Pursuant to Fed. R. Evid. 201(c), the Court may take judicial notice of the information provided on the Inmate Locator Service. *See, e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (citing *Harvey v. Eichenlaub*, 2007 WL 2782249, at *1 (E.D. Mich. Sept. 24, 2007)). In this case, the Court finds it appropriate, for the sake of efficiency and judicial economy, to take judicial notice of the fact that Plaintiff is currently incarcerated at NWCX. The Clerk is **DIRECTED** to update Plaintiff's address to the Northwest Correctional Complex, 960 State Route 212, Tiptonville, Tennessee 38079.

## II.    BACKGROUND

Plaintiff filed this complaint under 42 U.S.C. § 1983 on August 22, 2016 against Defendants Lee, Clark, Lundy, Shelton, Vaught, and O'Neil for alleged violations of his constitutional rights occurring while he was incarcerated at the Northeast Correctional Complex ("NECX") [Doc. 2 p. 1].

Plaintiff alleges that on or about April 6, 2016, Plaintiff's cell at NECX was searched by an Internal Affairs unit, and then he was required to take a drug test [*Id.* at 4]. After Plaintiff failed the drug test, he claims that Defendant Clark, a member of the Internal Affairs unit, told him and his cellmate that if they "wanted to see [their] family again," they would have to tell her how drugs were being brought into NECX [*Id.*]. Plaintiff alleges that he did not feel safe cooperating in the investigation because a correctional officer, Officer Hamm, was responsible for bringing drugs into the prison [*Id.*]. However, after Defendant Clark arranged for him to be taken to the medical bay to talk, Plaintiff told other correctional officers that Officer Hamm was the "dirty c/o" [*Id.*]. Plaintiff alleges that the correctional officers involved in the Internal Affairs investigation arranged for Officer Hamm to be moved to his pod, and Plaintiff was told to call a "snitch line . . . when C/O Hamm was bringing the next 'pack' (drugs) in" [*Id.*]. Plaintiff states that he again expressed his reservations about being involved in the investigation, but proceeded "thinking I would not be able to see my family" [*Id.* at 4–5].

Plaintiff then claims that "the very next day[,] the officers 'leaked' it to another inmate that my cell[mate] and I w[ere] working with I.A." [*Id.* at 5]. Next, Plaintiff alleges that his cell mate informed Defendant Lundy that they "wanted nothing to do with" the investigation [*Id.*]. After "it also got back to C/O Hamm that [Plaintiff and his cell mate were] going to set him up," Correctional Officer Hamm allegedly made comments about how Plaintiff was a snitch and

"having [his] eyes beat shut" [*Id.*]. On April 16, 2016, Plaintiff claims that he was assaulted in his pod, which resulted in his eyes "beat shut[,] and [his] leg . . . fractured to where [he] was on crutches for 4 weeks" and required surgery [*Id.*].

Ultimately, Plaintiff alleges that he "should have never been assaulted because [he] was in the protective custody pod, and the inmate who assaulted [him] should not have been out with [him]" [*Id.* at 6]. Further, Plaintiff claims that he "told [Defendant] O'Neil that [he] would be assaulted, and [he] would not fight back" [*Id.*]. Plaintiff then alleges that after he was still charged with fighting another inmate, he told Defendant Clark why he was assaulted, and "she just said, can you go back or not" [*Id.*]. Plaintiff claims that he was still "sent back to the same pod" [*Id.*]. At this point, Plaintiff alleges that he attempted to convince Correctional Officer Hamm that he was not a snitch, and his cellmate arranged a deal with Hamm where the cellmate could find pills for Hamm to pick up [*Id.* at 6–7].

Plaintiff claims that "this happened a few times, and [he] did tell [Internal Affairs] what was going on," but, although Correctional Officer Hamm was later arrested, Plaintiff and his cellmate were also sent "to the hole with write-ups saying [they] conspired with the C/O to bring in drugs" [*Id.* at 7]. Defendant Clark allegedly "denied any involvement" [*Id.*]. Later, Plaintiff claims that he "was taken to the hole on a bogus write up and [Defendant] Vaught yelled to the whole pod that [he] was a snitch, [and that he] told on C/O Hamm" [*Id.*].

Additionally, Plaintiff claims that he "tried to talk to [Defendant] Shelton" about his reservation with the Internal Affairs investigation, but that Defendant Shelton said that "he did not want to get involved" [*Id.* at 8]. Further, Plaintiff alleges that Defendant Lundy "knew and was [a]part of [Internal Affairs] busting Hamm" [*Id.*]. Lastly, Plaintiff claims that he was placed in the hole for "bogus write ups" due to his cooperation in the Internal Affairs investigation [*Id.*].

Ultimately, Plaintiff alleges that his reputation as a snitch will follow him to other prisons, that his knee is "forever damaged," and that he will "have to be on protective custody for the remainder of [his] time" [*Id.* at 7–8]. Plaintiff requests that the Court appoint him a lawyer and "send out summons," as well as seeks a temporary restraining order and compensatory damages [*Id.* at 9].

## III. ANALYSIS

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief."). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that they were deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, Plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

**B.     Supervisory Liability**

Plaintiff's complaint fails to include any factual allegations against Defendant Lee, Warden of NECX. Plaintiff must show that each Defendant upon whom he seeks to impose liability, through that Defendant's own conduct, has violated Plaintiff's constitutional rights. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

The requirement to plead that a defendant was personally involved arises because "[section] 1983 liability cannot be imposed under a theory of respondeat superior." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (internal citation omitted). To the extent that Plaintiff seeks to hold Defendant Lee liable based on his supervisory role as the Warden, a theory of supervisory liability is unacceptable in a § 1983 case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. A plaintiff must show "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal citation omitted).

Plaintiff's complaint fails to allege that Defendant Lee violated any of Plaintiff's constitutional rights, or that he "directly participated" in or "encouraged" violations by the jail staff. *Id.* Without factual contentions to support "the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff fails to state a claim upon which relief may be granted against Defendant Lee. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, Defendant Lee will be **DISMISSED** as a Defendant in this action.

C. **Failure to Protect Claims**

Plaintiff alleges that the Defendants failed to protect him from an attack by other inmates at NECX due to his involvement in an Internal Affairs investigation. Under the Eighth Amendment, prison officials "have an affirmative duty to protect inmates from violence

perpetrated by other prisoners." *Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir. 1998). Prison officials are obliged "to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state an Eighth Amendment claim, a plaintiff must allege facts showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm to the plaintiff. *Farmer*, 511 U.S. at 828. First, to satisfy the objective component, the inmate must show that the risk of harm was objectively "sufficiently serious." *Id.* In particular, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

To satisfy the subjective component, the inmate must establish that prison officials acted with "deliberate indifference" to his health or safety. *Id.* at 837. "An official is 'deliberately indifferent' if he or she 'knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harms exists, and he must also draw that inference.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 51 U.S. at 837).

Identifying an inmate as an informant or labeling him or her as a "snitch" may constitute deliberate indifference to the safety of the inmate. *See, e.g., Comstock v. McCrary,* 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks). Further, to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch. *See Thompson v. Mich. Dep't of Corrs.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of

8

harm); *Wilson v. Yaklich,* 148 F.3d 596, 600–01 (6th Cir. 1998) (holding plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury).

Initially, Plaintiff seeks to hold Defendants Shelton and Lundy liable under the Eighth Amendment based solely upon their involvement in the Internal Affairs investigation. He claims that he "tried to talk to [Defendant] Shelton" about the investigation, and alleges that Defendant Lundy "knew and was [a]part of [Internal Affairs] busting Hamm" [Doc. 2 p. 8]. However, Plaintiff fails to allege that either Defendant Shelton or Defendant Lundy "were aware of any specific danger to [him] by a particular inmate or group of inmates." *See Newell v. Ford*, No. 16-1003-JDT-egb, 2016 WL 4597631, at *7 (W.D. Tenn. Sept. 2, 2016) (holding prisoner failed to state a failure-to-protect claim due to a failure to allege deliberate indifference); *see, e.g.*, *Garner v. Hamilton Cty. Sheriff's Dep't*, No. 1:14–cv–262–CLC–CHS, 2015 WL 4873075, at *2 (E.D. Tenn. Aug. 13, 2015) (dismissing failure-to-protect claim where plaintiff "failed to establish that any individual was aware of facts from which it could be inferred that Plaintiff faced a substantial risk of harm . . . and that such an individual actually drew that inference but failed to act") (citing *Farmer*, 511 U.S. at 837).

Accordingly, Plaintiff has failed to allege that Defendants Shelton and Lundy possessed a "sufficiently culpable state of mind," as he fails to claim that either Defendant subjectively was aware of and disregarded a substantial risk to his safety. *See Farmer*, 511 U.S. at 834. Therefore, Plaintiff's allegations against Defendants Shelton and Lundy fail to state a claim for relief under § 1983, and Defendants Shelton and Lundy will be **DISMISSED**.

However, Plaintiff also claims that Defendants O'Neil, Clark, and Vaught acted in deliberate indifference by either labeling him as a snitch or being aware of the risk of attack due to this designation. Plaintiff alleges that Defendant Clark was involved in the Internal Affairs

investigation, and was aware that Correctional Officer Hamm knew of Plaintiff's involvement [Doc. 2 p. 6]. Additionally, Plaintiff claims that he told Defendants Clark and O'Neil why he was attacked, but he was still "sent back to the same pod" [*Id.*]. Lastly, Plaintiff claims that Defendant Vaught "yelled to the whole pod that [he] was a snitch, [and that he] told on C/O Hamm" [Doc. 2 p. 7]. Therefore, the Court finds for purposes of the initial review required by the PLRA, that Plaintiff has stated a colorable failure-to-protect claim under the Eighth Amendment against Defendants O'Neil, Clark, and Vaught. *See, e.g.*, *Comstock v. McCrary,* 273 F.3d 693, 699, n.2 (6th Cir. 2001); *Catanzaro v. Mich. Dep't. of Corrs.,* No. 08–11173, 2011 WL 768115, at *5 (E.D. Mich. Feb. 10, 2011) (citing *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir. 2001) (noting that being labeled a snitch could satisfy the *Farmer* standard for deliberate indifference to an inmate's safety)).

D. **Retaliation Claims**

Plaintiff claims that his cellmate arranged for Correctional Officer Hamm to pick up drugs, "a few times, and [Plaintiff] did tell [Internal Affairs] what was going on," but, although Correctional Officer Hamm was later arrested, Plaintiff and his cellmate were also sent "to the hole with write-ups saying [they] conspired with the C/O to bring in drugs" [Doc. 2 p. 7]. Later, Plaintiff claims that he "was taken to the hole on a bogus write up and [Defendant] Vaught yelled to the whole pod that [he] was a snitch, [and that he] told on C/O Hamm" [*Id.*].

Prisoners retain their First Amendment rights "not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Pell v. Procunier*, 417 U.S. 817, 832 (1974)). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable

under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998) (citation omitted).

A prisoner states a retaliation claim if he pleads and proves that: (1) he engaged in protected conduct, (2) an adverse action was taken against him, which would deter a person of ordinary firmness from continuing to engage in such conduct, and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "Even the threat of an adverse action can satisfy [the adverse action] element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)).

To the extent that they could be construed as asserting a retaliation claim, Plaintiff's factual allegations fail to state a claim for relief under § 1983. Plaintiff fails to allege that he was engaged in any constitutionally protected conduct. *See Thaddeus-X*, 175 F.3d at 394. Rather, Plaintiff claims that he was retaliated against for his involvement in an Internal Affairs investigation. Therefore, any potential retaliations claims fail to state a claim for relief under § 1983, and will be **DISMISSED**.

E.  **Injunctive Relief**

In his complaint, Plaintiff requests that the Court appoint an attorney to represent him [Doc. 2 p. 9]. Parties do not have an "automatic" constitutional right to counsel in a civil rights suit and, typically, counsel is only appointed in an exceptional case. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996) (observing that courts in the Sixth Circuit do not appoint counsel for indigent and pro se prisoners in civil rights cases absent truly extraordinary circumstances). The Court has carefully considered Plaintiff's request, his ability to represent himself, the record as a whole, and the issues and complexity of this case, and concludes that the appointment of counsel is not

warranted because there are no exceptional circumstances to justify appointing counsel. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). Accordingly, Plaintiff's request for counsel will be **DENIED**.

Lastly, Plaintiff requests a "temporary restraining order on all part[ies] involved" [Doc. 2 p. 9]. An inmate's request for injunctive relief against correctional officials based on their allegedly unconstitutional actions or inactions while the inmate was housed at a certain facility are rendered moot when the inmate is no longer incarcerated at that facility. *See, e.g.*, *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003); *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003). Therefore, because Plaintiff is no longer incarcerated at NECX, the basis for Plaintiff's request for a temporary restraining order against the Defendants has been rendered moot. Plaintiff's request for a temporary restraining order will thus be **DENIED**.

## IV. CONCLUSION

Accordingly, this action will proceed only as to Plaintiff's Eighth Amendment claims against Defendants O'Neil, Clark, and Vaught. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants O'Neil, Clark, and Vaught. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to timely return the completed service packets could jeopardize his prosecution of this action.

Defendants **SHALL** answer or otherwise respond to the complaint within twenty-one days from the date of service. If any Defendant fails to timely respond to the complaint, judgment by default may be entered against him.

Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

Therefore, for the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 5] is **GRANTED**, and Plaintiff's earlier motion for leave to proceed *in forma pauperis* [Doc. 1] is **DENIED as moot**. Nonetheless, Plaintiff will be **ASSESSED** the filing fee of three hundred and fifty dollars ($350), and shall follow the procedures as outlined in this Order;

2. Defendants Lee, Shelton, and Lundy will be **DISMISSED** as parties to this action;

3. Plaintiff's retaliation claims will be **DISMISSED**, and Plaintiff's requests for injunctive relief will be **DENIED**; and

4. This action will proceed as to Plaintiff's Eighth Amendment claims against Defendants O'Neil, Clark, and Vaught. The Clerk is **DIRECTED** to send Plaintiff a service packet for Defendants O'Neil, Clark, and Vaught.

**SO ORDERED.**

**ENTER:**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**