# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| GEORGE JOHN BYRD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 2:16-CV-271-PLR-MCLC |
| SHANNON CLARK, OFFICER J. VAUGHT, and OFFICER O'NEIL, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This is a pro se prisoner's civil rights action under 42 U.S.C. § 1983. Now before the Court is Defendants' motion for summary judgment [Doc. 38], in support of which Defendants filed a memorandum [Doc. 39], a statement of material facts [Doc. 40], and Plaintiff's deposition [Docs. 42 and 43]. Plaintiff has not filed a response to this motion and the time for doing so has passed. E.D. Tenn. LR 7.1(a)(2). As such, Plaintiff has waived any opposition thereto. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978); E.D. Tenn. LR 7.2. Also pending in this action are Plaintiff's motion for discovery [Doc. 48], to which Defendants have filed a response in opposition [Doc. 49], and Defendants' motion to dismiss for lack of prosecution due to Plaintiff's failure to file his pretrial narrative statement [Doc. 51], which Plaintiff has now filed [Doc. 52]. For the reasons set forth below, Defendants' motion for summary judgment [Doc. 38] will be **GRANTED** and the remaining motions [Docs. 48 and 51] will be **DENIED as moot**.

### I. BACKGROUND

The Court previously summarized the factual allegations of Plaintiff's sworn complaint as follows:

Plaintiff filed this complaint under 42 U.S.C. § 1983 on August 22, 2016[,] against Defendants Lee, Clark, Lundy, Shelton, Vaught, and O'Neil for alleged violations of his constitutional rights occurring while he was incarcerated at the Northeast Correctional Complex ("NECX").

Plaintiff alleges that on or about April 6, 2016, Plaintiff's cell at NECX was searched by an Internal Affairs unit, and then he was required to take a drug test. After Plaintiff failed the drug test, he claims that Defendant Clark, a member of the Internal Affairs unit, told him and his cellmate that if they "wanted to see [their] family again," they would have to tell her how drugs were being brought into NECX. Plaintiff alleges that he did not feel safe cooperating in the investigation because a correctional officer, Officer Hamm, was responsible for bringing drugs into the prison. However, after Defendant Clark arranged for him to be taken to the medical bay to talk, Plaintiff told other correctional officers that Officer Hamm was the "dirty c/o." Plaintiff alleges that the correctional officers involved in the Internal Affairs investigation arranged for Officer Hamm to be moved to his pod, and Plaintiff was told to call a "snitch line . . . when C/O Hamm was bringing the next 'pack' (drugs) in." Plaintiff states that he again expressed his reservations about being involved in the investigation, but proceeded "thinking I would not be able to see my family."

Plaintiff then claims that "the very next day[,] the officers 'leaked' it to another inmate that my cell[mate] and I w[ere] working with I.A." Next, Plaintiff alleges that his cell mate informed Defendant Lundy that they "wanted nothing to do with" the investigation. After "it also got back to C/O Hamm that [Plaintiff and his cell mate were] going to set him up," Correctional Officer Hamm allegedly made comments about how Plaintiff was a snitch and "having [his] eyes beat shut." On April 16, 2016, Plaintiff claims that he was assaulted in his pod, which resulted in his eyes "beat shut[,] and [his] leg . . . fractured to where [he] was on crutches for 4 weeks" and required surgery.

Ultimately, Plaintiff alleges that he "should have never been assaulted because [he] was in the protective custody pod, and the inmate who assaulted [him] should not have been out with [him]." Further, Plaintiff claims that he "told [Defendant] O'Neil that [he] would be assaulted, and [he] would not fight back." Plaintiff then alleges that after he was still charged with fighting another inmate, he told Defendant Clark why he was assaulted, and "she just said, can you go back or not." Plaintiff claims that he was still "sent back to the same pod." At this point, Plaintiff alleges that he attempted

2

to convince Correctional Officer Hamm that he was not a snitch, and his cellmate arranged a deal with Hamm where the cellmate could find pills for Hamm to pick up.

Plaintiff claims that "this happened a few times, and [he] did tell [Internal Affairs] what was going on," but, although Correctional Officer Hamm was later arrested, Plaintiff and his cellmate were also sent "to the hole with write-ups saying [they] conspired with the C/O to bring in drugs." Defendant Clark allegedly "denied any involvement." Later, Plaintiff claims that he "was taken to the hole on a bogus write up and [Defendant] Vaught yelled to the whole pod that [he] was a snitch, [and that he] told on C/O Hamm."

Additionally, Plaintiff claims that he "tried to talk to [Defendant] Shelton" about his reservation with the Internal Affairs investigation, but that Defendant Shelton said that "he did not want to get involved." Further, Plaintiff alleges that Defendant Lundy "knew and was [a]part of [Internal Affairs] busting Hamm." Lastly, Plaintiff claims that he was placed in the hole for "bogus write ups" due to his cooperation in the Internal Affairs investigation.

Ultimately, Plaintiff alleges that his reputation as a snitch will follow him to other prisons, that his knee is "forever damaged," and that he will "have to be on protective custody for the remainder of [his] time." Plaintiff requests that the Court appoint him a lawyer and "send out summons," as well as seeks a temporary restraining order and compensatory damages.

[Doc. 6 p. 3–5 (internal citations omitted)]. The Court screened the complaint and allowed only Plaintiff's Eighth Amendment claims against Defendants O'Neil, Clark, and Vaught to proceed [*Id.* at 6–13].

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the

3

burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon County*, 625 F.3d 935, 940 (6th Cir. 2010). A sworn complaint, however, carries the same weight as an affidavit for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Also, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id.* In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.*

### III. ANALYSIS

In their motion for summary judgment, Defendants seek summary judgment because (1) Plaintiff did not file a timely grievance regarding the allegations underlying his complaint[1]; (2)

---

[1] While Defendants rely on Plaintiff's statements in his deposition to assert that Plaintiff failed to timely file a grievance regarding the allegations in his complaint, Defendants have not filed the untimely grievance, any response thereto, or any other proof that jail officials did not address this grievance on the merits with their motion. Without such evidence, it is unclear whether Plaintiff exhausted his administrative remedies, as when a jail addresses an otherwise untimely grievance on the merits, courts generally consider any claim arising from that grievance on the merits. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010). Thus, the Court makes no filing as to whether Defendants have met their burden to establish that they are entitled to summary judgment on this ground.

4

Plaintiff stated in his deposition that he had sued Defendant O'Neil because of his status as supervisor; (3) Plaintiff stated in his deposition that no harm had resulted from Defendant Vaught calling him a snitch; and (4) Plaintiff's allegations against Defendant Clark are too vague and ambiguous to state a claim for relief. Defendants also assert that Plaintiff has failed to sufficiently allege that Defendants were personally involved in any violation of his constitutional rights.

The Court agrees with Defendants that, even accepting the allegations of Plaintiff's sworn complaint as true and liberally construing them in Plaintiff's favor, they do not establish evidence from which a jury could reasonably find that Defendants violated Plaintiff's constitutional rights. Accordingly, Defendants are entitled to summary judgment.

### A. Defendant Vaught

First, as to Defendant Vaught, while Plaintiff states in the complaint that Defendant Vaught called him a snitch, it is apparent from the complaint that Plaintiff alleges that this incident occurred after Plaintiff was assaulted [Doc. 2 p. 7 (stating that "[a]fter everything [related to the assault] started to calm down I was taken to the hole on a bogus write up and c/o Vaught yelled to the whole pod[] that I was a snitch, I told on c/o Ham"]. While Plaintiff confirmed that Defendant Vaught made this statement after the assault on him at least twice in his deposition [Doc. 42 p. 23–24, 58], he subsequently stated that Defendant Vaught "must have" said it before the assault, but ultimately stated that he was not sure [Doc. 43 p. 10].

Regardless of when Defendant Vaught called Plaintiff a snitch, however, Plaintiff has not set forth any evidence that would allow a reasonable juror to find that this statement actually caused any inmate to assault or otherwise harm Plaintiff.[2] Thus, Defendant Vaught is entitled to summary judgment, as there is no evidence in the record from which a reasonable juror could find that

---

[2] Notably, Plaintiff asserted at his deposition that Officer Ham specifically instructed Inmate Jacobs to assault him [Doc. 43 p. 1].

5

Defendant Vaught violated Plaintiff's constitutional rights. *See Thompson v. Mich. Dep't of Corrs.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Wilson v. Yaklich,* 148 F.3d 596, 600–1 (6th Cir. 1998) (holding that the plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury).

### B. Defendant Clark

Similarly, Plaintiff's only allegations in his complaint as to Defendant Clark are that Defendant Clark asked Plaintiff to be an informant in an investigation of an officer bringing drugs into the jail, but later denied his involvement, and that he sent Plaintiff back to the same pod in which Plaintiff had been assaulted despite his knowledge of the assault. Plaintiff, however, has not set forth any evidence from which a reasonable juror could find that Defendant Clark "directly participated, encouraged, authorized or acquiesced" in any violation of Plaintiff's constitutional rights. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Frazier v. Michigan,* 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983). As such, Defendant Clark is also entitled to summary judgment.

### C. Defendant O'Neil

Lastly, Plaintiff's only allegation in his complaint as to Defendant O'Neil is that Plaintiff told him that he would be assaulted and would not fight back prior to the assault on him [Doc. 2 p. 6]. At his deposition, Plaintiff specifically stated that Defendant O'Neil was the officer who let Plaintiff out of his cell right before an inmate assaulted him despite Plaintiff telling him not to do so because he was going to be assaulted and that he would not come out of his cell [Doc. 42 p. 58].

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This includes the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). Thus, prison officials must "to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

To establish a violation of this right, a plaintiff must show that a defendant was deliberately indifferent to the plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). To demonstrate deliberate indifference, the plaintiff must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregarded that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (*quoting Farmer*, 511 U.S. at 829, 847). Generally, an isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982).

In his deposition, Plaintiff stated that while he did not know who was going to assault him, he "knew" that he was going to be assaulted on the day that it happened because "you know when something is going to happen. You can tell by the way people [are] looking, how things get quiet. You've been in prison long enough, you know when something isn't right" [Doc. 43 p. 11]. Plaintiff further testified that he therefore told Defendant O'Neil that he would be assaulted, not to open his door, and that he would not come out of his cell, but Defendant O'Neil opened his cell door anyway [*Id.*]. Although Plaintiff acknowledged that he did not have to leave his cell at that time, Plaintiff testified that he did so and was talking to someone else from the top tier when Inmate Jacobs assaulted him [*Id.*]. Plaintiff further testified that although he saw Inmate Jacobs coming towards him, he did not know that Inmate Jacobs was going to assault him [*Id.* at 12].

7

Plaintiff's statement to Defendant O'Neil that he should not to let Plaintiff out of his cell because he would be assaulted is insufficient allow a reasonable jury to find that Defendant O'Neil actually inferred that Plaintiff was subject "to a substantial risk of serious harm." While the Court is aware that a jail official does not need to know the specific threat to which a prisoner is exposed in order to violate the prisoner's constitutional right to safety, *Farmer*, 511 U.S. at 842, and Plaintiff states in the complaint that information regarding him being labelled a "snitch" had leaked at the time of his assault, Plaintiff has set forth no evidence that Defendant O'Neil had any reason to know that Plaintiff had been labelled a snitch. Moreover, it is apparent from Plaintiff's deposition testimony that Plaintiff himself was not aware of any specific facts to support his belief that he would be assaulted on the day that he made this statement to Defendant O'Neil, but rather had a feeling that he was at risk based on his prison experience. Plaintiff's subjective feeling that he may be assaulted and his general statement to Defendant O'Neil that he would be assaulted, however, fail to establish that Defendant O'Neil knew or should have known that Plaintiff was subjected to a substantial risk of serious harm.

Moreover, to the extent that Plaintiff seeks to hold Defendant O'Neil liable under a theory of respondeat superior, such a claim is not cognizable under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (providing that liability cannot be imposed under § 1983 based on a theory of respondeat superior). As such, Defendant O'Neil is likewise entitled to summary judgment.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment [Doc. 53] will be **GRANTED**, the remaining pending motions [Docs. 48 and 51] will be **DENIED as moot**, and this action will be **DISMISSED**.

**AN APPROPRIATE ORDER WILL ENTER.**

**E N T E R:**

                /s/ Pamela L. Reeves
                UNITED STATES DISTRICT JUDGE